UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AVY BASDEN KENNY,

    **Plaintiff,**

vs.                                        Case No. 8:10-CV-1083-T-27EAJ

UNITED STATES OF AMERICA,

    **Defendant.**

_____/

## FINDINGS AND CONCLUSIONS

THIS CAUSE was tried before the court. Upon consideration of the evidence, the court finds and concludes:

Plaintiff brought this premises liability action against Defendant as a result of a slip and fall in the lobby of a post office. Plaintiff alleges the Defendant was negligent in maintaining the post office floor, inspecting the floor, and failing to warn her of a dangerous condition. To prevail on her claim, Plaintiff must prove by the greater weight of the evidence that: (1) the defendant owed a duty of reasonable care to maintain the premises in a reasonably safe condition; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages. Fla. Stat. §768.0710 (2009); *Lake Parker Mall, Inc. v. Carson*, 327 So. 2d 121, 123 (Fla. 2d DCA 1976).

On May 18, 2009, it essentially rained all day in the Tampa area. Approximately 1.26 inches of rain was recorded at the Tampa International Airport. Between 9:00 a.m. and 1:00 p.m., more than an inch of rain fell. (Plaintiff's Exh. # 14). That day, Plaintiff drove to the Peninsular Station ("Pen Station") of the United States Post Office during her lunch break. She recalled that it had rained heavily that morning but that it had subsided somewhat into a light sprinkle when she left for the post office.

As she entered the lobby area of the post office intending to enter the service counter area adjacent to the lobby, Plaintiff stepped onto a slip resistant mat at the threshold of the lobby. A second mat was in place at the threshold of the service counter area. Between the two mats, the tile floor was exposed (Plaintiff's Exh. # 15F). As Plaintiff proceeded toward the entrance of the service area, she

stepped onto the tile floor between the two mats. The heel of her leather sandal slipped out from under her, causing her to slip and fall. She attempted to break her fall with her right hand. As a result, she suffered a severe break of her right wrist. Ultimately, the fracture required surgery and the placement of a titanium plate and six screws in her wrist. Plaintiff incurred medical expenses of $16,649.35.[1]

It is undisputed that the tile floor on which Plaintiff slipped was wet, likely caused from customers entering the lobby from outside in the rain. Plaintiff did not see any water on the floor when she entered the post office but saw a sheen of water on the tile floor after she fell. Although the post office had caution signs and a mop and bucket available, there were no caution signs in place when Plaintiff fell, and there was no indication that a mop or bucket was present. Shortly after Plaintiff fell, Karen Mills, who knew Plaintiff from church, walked into the lobby with her son. As Mills described, it was raining and they made a dash for the Post Office from their vehicle. When she entered, she saw someone on the floor and offered assistance. Upon recognizing Plaintiff, she stayed with her until the paramedics arrived and ultimately drove her to the emergency room. Mills also saw a sheen of water on the tile floor and noticed that Plaintiff's skirt was wet from the fall.

According to Deborah Draga, who managed the Pen Station office at the time, the two slip-resistant mats had been placed on the floor of the lobby to enable customers to wipe their feet, absorb moisture, and prevent tracking of dirt and debris into the lobby. She acknowledged that the two mats were not large enough to cover the lobby area where customers traversed. Although she was not present at the Pen Station on May 18, 2009, she was familiar with the maintenance procedures in place at the time of the incident. The contracted maintenance crew cleaned the floors every morning, but no one maintained the floors during working hours. Post Office counter employees were to inspect the floors during the day when they emptied the automatic postage machine in the lobby and when they went outside to empty the blue mail boxes. These dispatches were scheduled to occur two times during working hours and when the station closed: at 12:30 to 1:00 p.m.; 3:00 to 3:30 p.m.; and at 6:00 p.m.

Draga confirmed that the Pen Station had a wet floor sign, mop and bucket available. She

---

[1] There are no collateral set offs to the medical expenses.

recalled that although she went there virtually every day, she had never seen water on the floor at the Pen Station. Other than Plaintiff's fall, she had never seen an incident report documenting a slip and fall at the Pen Station in the eight years she managed the station. And to her knowledge, the employees at the Pen Station never had to use the wet floor sign. The employees would mop as necessary when excessive moisture accumulated on the floors. Draga described the tile flooring at the Pen Station as smooth surfaced.

The Post Office's Supervisor's Safety Handbook ( Defendant's Exh. # 2) addresses procedures the employees are to follow "to prevent potential slip, trip, or fall accidents." Specifically, the handbook provides that with respect to floor mats, "[t]he improper placement of mats or rugs (or lack of them) can cause customer injuries and result in significant liability to the Postal Service" (Section 8-7.1 k). With regard to "Wet Floors," the handbook provides that employees should be instructed to observe "safety guidelines for wet floors," including (a) keeping wet floors "roped off with 'Wet Floor' signs or high visibility safety barricades until the floors are dry," (b) maintaining "a dry area for pedestrian traffic," (c) placing "rubber mats or all-weather mats at entrances, including lobby areas, when inclement weather develops," and (d) using a "[d]amp mop as often as necessary where excessive moisture accumulates on . . . lobby floors, or high traffic areas." (Section 8-7.3, "Wet Floors").

By virtue of these provisions, the Post Office certainly appreciated the risk to customers if wet floors existed in the lobby areas. As defense counsel acknowledged, in Florida, it is foreseeable that water could be tracked in when it rains and the Post Office had a duty to take precautions to keep the floors safe, consistent with Fla. Stat. § 768.0710 (2009)[2], which provides:

> (1) The person or entity in possession or control of business premises owes a duty of reasonable care to maintain the premises in a reasonably safe condition for the safety of business invitees on the premises, which includes reasonable efforts to keep the premises free from transitory foreign objects or substances that might foreseeably give rise to loss, injury, or damage.

---

[2] The defense did not argue that Fla. Stat. § 768.0755 (2010), which repealed § 768.0710, applied retroactively, and for apparent good reason. There is nothing which suggests that the Florida Legislature intended §768.0755 to operate retroactively. As has been noted, "the current statute adds a new element to the claim, creating a new legal obligation and attaching new legal consequences to events that took place before the statute's enactment; therefore, the plaintiff's substantive rights are affected." *Kelso v. Big Lots Stores, Inc.*, No. 8:09-cv-01286-T-EAK-TGW, 2010 WL 2889882, (M.D.Fla. July 21, 2010).

(2) In any civil action for negligence involving loss, injury, or damage to a business invitee as a result of a transitory foreign object or substance on business premises, the claimant shall have the burden of proving that:

    (a) The person or entity in possession or control of the business premises owed a duty to the claimant;

    (b) The person or entity in possession or control of the business premises acted negligently by failing to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the business premises. Actual or constructive notice of the transitory foreign object or substance is not a required element of proof to this claim. However, evidence of notice or lack of notice offered by any party may be considered together with all of the evidence; and

    (c) The failure to exercise reasonable care was a legal cause of the loss, injury, or damage.

Consistent with this statute, the Post Office owed a duty to Plaintiff to maintain its premises in a reasonably safe condition, and to undertake reasonable efforts to keep the premises free from transitory substances such as water that might foreseeably give rise to injury. I find that the Post office failed in its duty of care in two respects: (1) failing to maintain the lobby area floors in a reasonably safe condition and (2) failing to warn customers of the wet floors at a time when it would reasonably be expected that water would accumulate on the tile floors.

It is undisputed that it had rained most of the day on May 18, 2009. It was therefore reasonable for the Post Office to have expected that customers would track water into the lobby of the Pen Station that morning and throughout the day, creating a risk that the area of the tile floor in the lobby not covered by the mats would be wet and slippery. The heavier rains occurred in the early hours of May 18th. Although the floors were cleaned by the contracted cleaning crew before the Post Office opened, no one was responsible for maintaining the floors, except to mop up any excessive water which had accumulated. Certainly, under the circumstances, the Post Office had a duty to inspect the lobby floor to ensure that excessive water which had accumulated was mopped up, as Ms. Draga surmised would

have occurred.³ Although the counter sales employees were expected to inspect the lobby area when they serviced the APC machine and picked up mail from the outside boxes, the scheduled dispatch was between 12:30 and 1:00 p.m. Even if an employee conducted an inspection at that time, although there is no evidence that such an inspection took place, the next inspection was not scheduled until 3:00 to 3:30 p.m. Plaintiff's slip and fall occurred at approximately 1:30 p.m., between those scheduled inspections, if they in fact took place. Again, there is no evidence that the inspections took place, or that Post Office employees mopped the floor on May 18th.⁴

Although the placement of slip-resistant mats at the entrances to the lobby and service area was undisputedly a reasonable precaution to take, the evidence establishes that the two mats in the lobby of the Pen Station did not cover the area where customers such as Plaintiff would have been expected to walk during inclement weather. Accordingly, tile was left exposed on which water would accumulate from dripping umbrellas, wet shoes, raincoats and clothing. Because the mats did not cover the pathway customers would be expected to traverse, they were not sufficient to absorb all water that was tracked in. It is therefore reasonable to infer that the water which accumulated on the tile floor in the lobby that day came from customers who tracked it in. Plaintiff and witness Mills saw a water sheen on the tile immediately after Plaintiff's fall. This water accumulation on the tile between the mats created an unsafe condition which might foreseeably give rise to an injury like that suffered by Plaintiff.

Secondly, although it was reasonable to expect that on inclement days such as May 18, 2009, customers would track water into the lobby area and onto the tile floor, the Post office should have utilized the wet floor sign it had available to warn customers like Plaintiff of the danger of wet floors. It is of no moment that Manager Draga testified that she had never observed water on the floor, was not

---

³ The court gives no weight to Draga's testimony that inspections were documented on forms maintained by the Post Office. No such forms were introduced into evidence.

⁴ Accordingly, this case is factually distinguishable from *Zimmerman v. Eckerd Corp.*, 839 So. 2d 835, 836 (Fla. 3d DCA 2003). There, there was "no evidence whatsoever as to the nature of the liquid on which the plaintiff slipped, where it came from, or how long whatever it was had been there." *Id.* The court, in affirming summary judgment in favor of the premises owner, cited the "unimpeached" testimony of an Eckerd manager that the floor had been inspected and maintained "every five to ten minutes" before the accident, which affirmatively demonstrated the absence of liability under section 768.0710(2)(b).

aware of any prior slip and falls, or that the Pen Station never had to post warning signs during her tenure. The Supervisor's Handbook demonstrates that the Post Office was acutely aware of the risk of injury from wet floors and had procedures in place to address that risk. In this instance, however, the employees at the Pen Station failed to utilize the wet floor sign available to them, a safety measure which may well have prevented or minimized the risk of injury such as that suffered by Plaintiff.

In failing to maintain its floor in a reasonably safe condition, the Post Office violated not only its own internal procedures but the requirements of applicable codes and standards. In this regard, the testimony of Dr. Elliott Stern supplies additional evidence supporting the negligence of the Post Office. Dr. Stern, who I find to be eminently qualified in the field of mechanical engineering, testified that although the slip resistance of dry flooring (.76 average slip index) in the Pen Station was adequate and sufficient, when wet, the tile flooring's average slip index of .22 is "significantly" below that required by acceptable standards.[5] I find Dr. Elliott's opinion that the floor of the Post Office lobby presented a non-uniform slip resistant surface which created unreasonably hazardous condition in foreseeable wet conditions persuasive.

Although there is little evidence to establish how long the water remained on the floor, Plaintiff was not required to prove actual or constructive notice that water was on the floor to prove her claim. Fla. Stat. § 768.0710(2)(b); *Food Lion, LLC., v. Monument/Julington Assoc. Ltd. Partnership*, 939 So. 2d 1106, 1108 (Fla. 1st DCA 2006).[6] It is sufficient, and I so find, that the evidence established that the Post Office appreciated the risk of injury from wet floors, implemented maintenance procedures

---

[5] Dr. Elliott relied on standards such as the 2006 Life Safety Code (Plaintiff's Exh. # 15B)("Walking surfaces shall be slip resistant under foreseeable conditions. The walking surface of each element in the means of egress shall be uniformly slip resistant along the natural path of travel."), the ASTM designations for Safe Walking Surfaces (Plaintiff's Exh. # 15D)(4.1.3: "Walkway surfaces shall be slip resistant under expected environmental conditions and use."), and the slip resistant guidelines promulgated by ANSI (Plaintiff's Exh. # 15E).

While the defense brought out on Dr. Elliott's cross examination that ATSM 1679 may have been withdrawn, the Life Safety Code is a national fire protection standard, ANSI 12A Sec. 1264.2 does not apply to retail establishments, and the Florida Building Code seemingly exempts federal buildings, the defense did not present an expert witness or otherwise counter Dr. Elliott's opinions with *evidence*. His opinions are therefore reliable and persuasive.

[6] Cases cited by Defendant such as *Silver Springs Moose Lodge No. 1199 v. Orman*, 631 So. 2d 1119, 1121 (Fla. 5th DCA 1994) are therefore inapposite because they were decided when actual or constructive notice of the existence of the water was a required element of a plaintiff's cause of action in a slip and fall case.

intended to prevent slip and falls on wet floors, and reasonably would have expected water to be tracked into the lobby by customers on days with inclement weather, such as May 18, 2009 when it had rained all day.

In conclusion, I find the Post Office was negligent on May 18, 2009, and that its negligence was a legal cause of Plaintiff's injury. That is, the Post Office failed to use reasonable care in maintaining its floor in a safe condition and failed to warn its customers of a known risk of injury. The inadequate floor mats and absence of warning signs demonstrates by the greater weight of the evidence that the Post Office breached its duty of care to Plaintiff.[7]

## Damages

The medical bills Plaintiff incurred are not disputed, either as to reasonableness or necessity. In Florida, a plaintiff may recover for "[a]ny bodily injury sustained . . . and any resulting pain and suffering, [disability or physical impairment] [disfigurement] [mental anguish] [inconvenience] [or] [loss of capacity for the enjoyment of life] experienced in the past [or to be experienced in the future]." *In re Standard Jury Instructions In Civil Cases-Report No. 09-01* (Reorganization of the Civil Jury Instructions) 35 So. 3d 666, 776-777 (Fla. 2010). "There is no exact standard for measuring such damage. The amount should be fair and just in the light of the evidence." *Id.*

As for pain and suffering and loss of capacity for the enjoyment of life, past and future, I find that Plaintiff suffered severe pain when she broke her wrist and will experience some pain in the future as a result of her injury. As a result of the incident, she is unable to lead as active a lifestyle as she did before the incident. Playing the piano, scrapbooking and ordinary household tasks are now painful for her. She is unable to travel as she once did because of her physical limitations. She cannot provide the same level of care to the young children she teaches because of physical limitations. In sum, I find that her injury has diminished Plaintiff's ability to enjoy life. Accordingly, from the greater weight of the evidence, I award Plaintiff the following damages, based on a life expectancy of approximately 25 years:

1. Medical expenses incurred in the past: $ 16, 649.35.

---

[7] Defendant abandoned its affirmative defense of comparative negligence during final argument.

2. Pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life:

    a. sustained in the past: $ 25,000.00

    b. to be sustained in the future: $ 20,000.00

3. Total amount of damages: $ 61,649.35

The Clerk is directed to enter judgment as set forth above and to close this case. Jurisdiction is reserved to consider taxable costs and fees, is any.

**DONE AND ORDERED** this 16th day of February, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record